IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>Debroy Stoney,<br>dba British Sports Car Service<br>and Sylvia Jean Stoney,<br><br><br>                                        Debtors. | Chapter 7<br><br>Case No. 04-04711-PHX-SSC<br><br>Adv. No 04-716<br><br><br>MEMORANDUM  DECISION<br>(Opinion to Post) |

I. Preliminary Statement

On April 11, 2005, this Court conducted the first phase of a bifurcated trial, focusing on the limited issue of whether Debroy Stoney, the Debtor, provided a release of all claims to Goldrop International, Inc. ("Goldrop"), after this adversary proceeding was commenced. For the reasons set forth hereinafter, the Court concludes that the Debtor did not release his claims against Goldrop and Mr. Dilip Bansal. By separate notice, the Court will set this matter for a final pretrial conference to resolve the remaining issues between the parties.

This Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. This Court has jurisdiction over these matters, and they are a core proceeding. 28 U.S.C. §§1334 and 157. (West 2005).

## II. Factual Discussion

On March 22, 2004, Debroy Stoney and Sylvia Jean Stoney commenced this Chapter 7 proceeding. Mr. Stoney had operated a sole proprietorship known as British Sports Car Service located at 2316 E. Polk Street in Phoenix. Goldrop was the owner of the property and, hence, served as the Debtor's landlord. The current adversary, commenced by the Debtor on April 30, 2004, alleges that Goldrop and its principal, Mr. Bansal, violated the automatic stay and have failed to turn over property which belongs to the Debtor and the bankruptcy estate.

At a Rule 7016 Scheduling Conference in this adversary on August 19, 2004 this Court, desiring to narrow the issues to determine what property of the bankruptcy estate was still at the Polk Street location which could be turned over to the Debtor for the benefit of his creditors, directed the parties to proceed with an inventory of the property then remaining at the Polk Street address. The Court anticipated that the inventory would be done within a short period of time and that the parties would cooperate in preparing the final document.[1]

At the bifurcated trial on April 11, 2005, the Debtor and Mr. Bansal testified that on August 23, 2004, the Debtor and Mr. Bansal met to determine what property of the Debtor's and the estate's still remained at the Polk Street address and to set a date when the Debtor could remove the property. To memorialize their agreement, Mr. Bansal hand wrote a document which the Debtor executed.[2] The Debtor then returned a few days later on August 25, 2004. Mr. Don Akiyama accompanied him, and the Debtor brought appropriate trucks and equipment to remove the property. Mr. Bansal testified, and it was confirmed by the witnesses, that Mr. Greg McCurry and Ms. Carol Hogan were also present.

Although there was conflicting testimony as to what transpired on August 25, 2004, the Court concludes that the Debtor and Mr. Bansal walked the property and then the Debtor, Mr. Akiyama, and one or two individuals assisted the Debtor in removing the property

---

**1.** *See* Docket Entry No. 8, the minute entry from the August 19, 2004 Scheduling Conference.

**2.** *See* Exhibit 3.

and loading it on the trucks. All of the witnesses at the bifurcated trial agreed that, given the amount of property to be loaded that day, it took a number of hours to complete the task. Mr. Bansal testified, and the Debtor did not dispute, that as the property was being removed, Mr. Bansal was preparing an itemized list. It is also clear that although the Debtor had a number of individuals to assist him in removing the property, he did not prepare his own list of inventory and did not simultaneously assist in the preparation of the itemized list with Mr. Bansal. It is also clear that neither party had his attorney on site, requested that an auctioneer or similar independent agent assist, or requested that the Chapter 7 Trustee be present to assist in the preparation of the inventory.

The testimony of Ms. Hogan, as to the preparation of the inventory, was not helpful in that she remained in the office for most of the day and did not witness Mr. Bansal prepare the inventory except as to a few items. Mr. Akiyama, who testified on behalf of the Debtor, did not actually see the written inventory; he only saw Mr. Bansal with a clipboard, and did witness the Debtor execute some document on the clipboard while outside. In turn, Mr. McCurry, a witness for Mr. Bansal, only watched Mr. Bansal prepare a document from a distance. In fact, two documents were prepared by Mr. Bansal that day. One document was a list of the vehicles removed by the Debtor,[3] and the second list was a list of the inventory.[4]

The testimony of Mr. Akiyama and the Debtor that the Debtor signed the inventory list outside the business premises may be explained, and the Court so concludes based on the testimony of Mr. Bansal, by the fact that the Debtor did execute outside the list of vehicles to be removed. This is the document that Mr. Akiyama saw the Debtor sign from a distance.

As to the more detailed list of inventory, Exhibit 5, the Court concludes that based on the testimony of Mr. Bansal, Ms. Hogan, and Mr. McCurry, the Debtor executed that list inside the air conditioned office located on site. The Court concludes that the Debtor executed the list to the right of the listed items, because the page was almost completely full with the

---

**3.** *See* Exhibit 4.

**4.** *See* Exhibit 5.

1  inventory items to be removed. Although the Debtor did not seem to recall executing the
2  document on the side, the Court found the testimony of Mr. Bansal and Ms. Hogan on this point
3  to be persuasive. The Court concludes that the testimony of the Debtor that the document was
4  not the document that he signed or that the document was altered after the Debtor executed the
5  inventory items to lack credibility.

6  As to the testimony from Mr. Bansal and Ms. Hogan that Mr. Bansal went over
7  the inventory list, item by item, with the Debtor in the air conditioned office before the Debtor
8  was asked to execute the document, the Court questions the recollection of said individuals and
9  gives no weight to this evidence. First, the Debtor does have an hearing deficiency. The Court
10 finds it difficult to conclude on this record that each item was discussed with the Debtor in detail,
11 including the release at the bottom of the page. Moreover, the testimony of Mr. Bansal and Ms.
12 Hogan was not consistent as to what was said to the Debtor at the time. Mr. Bansal believed that
13 he discussed each item, the release, and then asked the Debtor whether the "lawsuit" was
14 "finished."  Ms. Hogan did recall the Debtor and Mr. Bansal discussing the list, and Mr. Bansal
15 saying to the Debtor words to the effect of "It is finished?" or "The lawsuit is finished?"
16 However, given the Debtor's hearing deficiency, the Debtor credibly testified that he believed
17 that he was simply reviewing the inventory list and that he believed the parties were simply
18 noting that the inventory list "was finished" or [the inventory list] was done. The Debtor insisted
19 that he did not realize that he was being asked to release all claims, and given his hearing
20 deficiency, the Court concludes that the Debtor believed that the parties were finished or had
21 completed the inventory, and they were done for the day.

22 Mr. Bansal and his counsel also rely on the fact that the detailed inventory,
23 Exhibit 5, also has a written release provision in the last sentence of the document. However, the
24 release provision is in the relatively small and unclear handwriting of Mr. Bansal at the very end
25 of the document. The Court had only directed the parties to meet and prepare a detailed
26 inventory. Both parties were represented by counsel, yet neither counsel was present at the time.
27 The Debtor did not contemplate, nor should he have, that he would be asked to release any
28 claims that he had against Goldrop and Mr. Bansal that day or in that inventory document. The

- 4 -
Case 2:04-ap-00716-SSC    Doc 21    Filed 07/12/05    Entered 07/12/05 14:20:58    Desc
Main Document    Page 4 of 7

Court concludes that to insert such a release of all claims in an inventory document, which release was not reviewed by the Debtor's counsel, was improper by Goldrop and Mr. Bansal and was overreaching on their part.

### III. Legal Discussion

Since the parties have asked this Court to determine the validity of an oral release or a written release contained on an inventory list, this Court should review applicable state law. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Given that this release was executed in Arizona by the parties during the course of this bankruptcy proceeding, this Court will apply Arizona law to determine the validity of the release. The construction and enforcement of settlement agreements, including the determination as to the validity and scope of a release are governed by general contract principles under Arizona law. Parrish v. United Bank of Arizona, 164 Ariz. 18, 790 P.2d 304 (App.1990); Hisel v. Upchurch, 797 F. Supp. 1509 (D. Ariz. 1992).[5]

Releases are strictly construed against the party who drafted the release. Bothell v. Two Point Acres, Inc., 192 Ariz. 313, 965 P.2d 47 (App.1998). In addition to reviewing the language of a release to see whether its clear, explicit, and unambiguous, a court must also consider the intent of the parties. Tabler v. Indus. Comm'n, 202 Ariz. 518, 47 P.3d 1156, 1159 (App.2002). The release of claims must be voluntary, deliberate, and informed. cf. Stroman v. West Coast Grocery Co., 884 F.2d 458 (9th Cir. 1989).

The rule in Arizona is that a general release can be avoided on the ground of mutual mistake. Parrish v. United Bank of Arizona, 164 Ariz. 18, 790 P.2d 304 (App.1990) *citing* Dansby v. Buck, 92 Ariz. 1, 373 P.2d 1 (1962). Arizona also recognizes that a unilateral mistake induced by misrepresentations or contractual ambiguities may constitute grounds for

---

**5.** However, if the rights of the litigants had derived from a federal statute, federal law would have governed the rights and remedies of the parties. Stroman v. West Coast Grocery Co., 884 F.2d 458, 458 (9th Cir. 1989), *cert. denied*, 498 U.S. 854, 11 S.Ct. 151, 112 L.Ed.2d 117 (1990).

avoiding a release. <u>Parrish</u> *citing* <u>Hendricks v. Simper</u>, 24 Ariz.App. 415, 539 P.2d 529 (1975). If one party is operating under a mistake of fact when it signs an agreement, the agreement is voidable if the other party knew or should have known that the first party was mistaken. <u>Inter-Tel, Inc. v. Bank of America, Arizona,</u> 195 Ariz. 111, 985 P.2d 596 (App.1999).

As previously noted by the Court, the Court does not believe that the Debtor intended to release all claims. First, and foremost, the purpose of the parties meeting was to prepare an inventory list - not settle their claims. The purpose of the meeting was limited in scope, per the direction provided by the Court. While both parties were represented by counsel, neither counsel was present during the execution of the alleged release of claims. Moreover, the Court believes that in light of the Debtor's hearing deficiency, and the original purpose of the meeting, the Debtor was in fact operating under a mistake of fact, and did not realize he was being asked to release all claims when he signed the inventory list. The relatively small and unclear handwriting of Mr. Bansal setting forth the release provision at the end of the inventory list compounded the mistake of fact by the Debtor. The release was not clear, explicit, and unambiguous. The release does not reflect the intent of both parties. Therefore, the Court concludes that the release purportedly entered into by the parties is void.

## V. Conclusion

Based upon the foregoing, the Court concludes that the release contained in the inventory list is void. The Debtor never intended to, and did not, release the claims that he had against Goldrop and Mr. Bansal. The release was executed under a mistake of fact by the Debtor. Moreover, neither party was represented by counsel at the time the inventory list containing the release was presented to the Debtor. To uphold the release under such circumstances would be highly prejudicial to the Debtor and improper under Arizona law. The parties shall proceed to present evidence in this adversary proceeding, so that it may be resolved on the merits.

The Court will execute a separate order incorporating this Memorandum Decision.

DATED this 12th day of July, 2005.

_____
Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

BNC to NOTICE